FILED & JUDGMENT ENTERED
Steven T. Salata

Mar 20 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_Laura T. Beyer_
Laura T. Beyer
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: PETTUS PROPERTIES, INC.<br><br>Debtor. | |
| PETTUS PROPERTIES, INC., STERLING PROPERTIES OF THE CAROLINAS, LLC, and JERROD H. PETTUS, SR., individually and as the Executor of THE ESTATE OF ELEANOR PHILLIPS PETTUS,<br><br>Plaintiffs,<br><br>v.<br><br>VFC PARTNERS 8, LLC,<br><br>Defendant. | CASE NO. 10-31632<br><br>CHAPTER 11<br><br>Adv. Proc. No. 11-3213 |

**ORDER DENYING PLAINTIFFS' MOTION FOR**
**EQUITABLE REMAND AND/OR PERMISSIVE ABSTENTION**

THIS MATTER came before the Court on the Motion for Equitable Remand

and/or Permissive Abstention (the "Remand Motion"), and the Memorandum in Support

of the Remand Motion, filed by Pettus Properties, Inc. ("Pettus Properties"), Sterling Properties of the Carolinas, LLC ("Sterling"), and Jerrod H. Pettus, Sr., individually and as the Executor of the estate of Eleanor Phillips Pettus (together, "Plaintiffs").  VFC Partners 8, LLC, the defendant in this action ("VFC"), filed an Objection to the Remand Motion.  On January 23, 2012, Plaintiffs filed a Response to Defendant's Objection.  A hearing on the Remand Motion and VFC's Objection thereto was conducted before this Court on January 25, 2012.

## BACKGROUND AND PROCEDURAL HISTORY

On June 8, 2010 (the "Petition Date"), Pettus Properties filed the above-captioned bankruptcy case (the "Bankruptcy Case") under Chapter 11 of the Bankruptcy Code. Since the Petition Date, Pettus Properties has retained and managed its properties and operated as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On the Petition Date, Branch Banking & Trust Company ("BB&T") was the largest secured creditor of Pettus Properties.  BB&T filed a Proof of Claim (No. 6) on October 7, 2010 asserting a secured claim in the amount of $3,087,397.45 based upon four notes owed by Pettus to BB&T.  On the Petition Date, the other Plaintiffs were also allegedly obligated to BB&T under other promissory notes and/or guaranty agreements. The promissory notes evidencing Pettus Properties' and Sterling's alleged obligations to BB&T are referred to collectively herein as the "Notes."

In December, 2010, VFC purchased BB&T's interest as the obligee under the Notes and other documents related thereto, as well as certain obligations allegedly owed to BB&T by Catawba Station, LLC.  Following VFC's acquisition of the obligations

2

owed by Plaintiffs to BB&T, on or about December 30, 2010, VFC and the Plaintiffs entered into an agreement (the "Global Agreement") whereby VFC agreed to release all liens and claims against the Plaintiffs under the Notes, as well as liens and claims against Catawba Station, LLC, in exchange for a reduced payoff of the obligations under the Notes and obligations owed by Catawba Station, LLC, in the amount of $6,500,000.00 plus a 1% fee. The Global Agreement provided for the reduced payoff amount to be paid through a two phase settlement. As part of the first phase of the settlement, on or about December 30, 2010, Plaintiffs made a payment to VFC of $1,500,000.00, along with payment of a $15,000.00 fee.

As part of the second phase of the settlement under the Global Agreement, VFC and the Plaintiffs subsequently entered into a Settlement Agreement and Mutual Release of Claims dated February 17, 2011 (the "Settlement Agreement"), which provided, among other provisions, for VFC to release all liens and claims against the Plaintiffs under the Notes and related documents in exchange for a reduced payoff of the obligations under the Notes in the amount of $5,000,000.00, plus a fee in the amount of $65,000.00, which was to be paid pursuant to a payment schedule set forth in the Settlement Agreement. The Settlement Agreement provided that the final payment of the reduced payoff amount was due on April 30, 2011, with the option for the Plaintiffs to extend the final payment through July 31, 2011 by notice and payment of an extension fee. In February, 2011, funds in the amount of $500,000.00 that had been deposited in escrow by Plaintiffs under the first phase of the Global Agreement were paid to VFC and reduced the remaining amount owed under the Settlement Agreement to $4,500,000.00, plus the applicable fee.

Plaintiffs exercised their option to extend the final payment date under the Settlement Agreement through July 31, 2011. By Supplements to the Settlement Agreement, the Plaintiffs and VFC agreed to further extend the final payment date through August 31, 2011.

Plaintiffs did not make the final settlement payment due under the Settlement Agreement, as supplemented, by August 31, 2011.

On November 4, 2011, Plaintiffs filed a Complaint in the Superior Court for Union County, North Carolina (the "State Court") commencing the above-captioned lawsuit against VFC (the "Lawsuit"). The Complaint alleged causes of action for Tortious Interference of Contract, Breach of Covenant of Good Faith and Fair Dealing, Unfair and Deceptive Trade Practices, and Preliminary and Permanent Injunctions. The claims in the Complaint are based upon allegations that VFC wrongfully communicated with Commonwealth Commercial Properties, LLC ("Commonweath"), who had entered into a contract for the sale of certain real property owned by Sterling in South Carolina, and allegedly took other actions which were intended to result in, and which did result in, Commonwealth terminating its contract to purchase the South Carolina property. The proceeds from the sale of this property to Commonwealth were going to be used to fund the final payment under the Settlement Agreement. As a result of Commonwealth's termination of the contract to purchase the South Carolina property, Plaintiffs were not able to make the final payment under the Settlement Agreement by August 31, 2012.

On November 11, 2011, VFC removed the Lawsuit to this Court in accordance with Federal Rule of Bankruptcy Procedure 9027 and 28 U.S.C. §§ 157 and 1452. On December 21, 2011, the Plaintiffs filed an Amended Complaint in the Adversary

4

Proceeding, which alleges additional causes of action for Breach of Contract, Negligent Misrepresentation, and Antecedent Breach/Waiver/Estoppel against VFC.

On December 28, 2011, Plaintiffs filed the Remand Motion seeking to have the Lawsuit remanded to the State Court.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the pleadings filed in this adversary proceeding and in the Bankruptcy Case, and the arguments of the parties at the hearing, the Court hereby makes the following findings of fact and conclusions of law:

**A.    THE CAUSES OF ACTION IN THE AMENDED COMPLAINT ARE "CORE" PROCEEDINGS UNDER 28 U.S.C. 157(b).**

The Court hereby finds that causes of action asserted in the Amended Complaint constitute "core" proceedings, under 28 U.S.C. § 157(b), which arise in Pettus Properties' bankruptcy case. All of Plaintiffs' causes of action in the Lawsuit are based upon claims that arose after Pettus Properties filed for bankruptcy. The Lawsuit alleges a post-petition breach by VFC of the Settlement Agreement, which was not entered into until after the Bankruptcy Case was filed. Likewise, the causes of action allege that VFC interfered with the potential sale to Commonwealth by VFC's conduct that occurred after the Bankruptcy Case was filed.

Since all of the causes of action in the Lawsuit are based upon post-petition conduct and the alleged post-petition breach of a post-petition contract, the claims in the Lawsuit are "core" proceedings that "arise in" the Bankruptcy Case. Shubert v. Wellspring Media, Inc. (In re Winstar Communs., Inc.), 335 B.R. 556 (Bankr. Del. 2005)(claim based upon post-petition agreement to sell assets of debtor in possession is "core" proceeding); Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),

5

163 F.3d 925 (5th Cir. 1999); Grausz v. Englander, 321 F.3d 467 (4th Cir. 2003)(adversary proceeding brought by debtor to enforce malpractice claim against debtor's bankruptcy attorney is "core" proceeding).

Additionally, the causes of action are "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (C), and (O).  Under 28 U.S.C. § 157(b)(2)(A) and (O), the causes action are "core" because the claims against VFC will directly affect the administration of the bankruptcy estate and affect the "adjustment of the debtor-creditor . . . relationship" between VFC, a creditor in the Bankruptcy Case, and Pettus Properties.

The claims in the Lawsuit also constitute "core" proceedings under 28 U.S.C. § 157(b)(2)(C), since the claims by Pettus Properties are essentially counterclaims against VFC, the holder of substantial claims against Pettus Properties in the Bankruptcy Case.

**B.    PERMISSIVE ABSTENTION AND EQUITABLE REMAND ARE NOT JUSTIFIED IN THIS CASE.**

In the Remand Motion, Plaintiffs seek permissive abstention under 28 U.S.C. § 1334(c)(1) requesting that this Court abstain from hearing this Lawsuit in favor of the State Court.   Under 28 U.S.C. § 1334(c)(1), a bankruptcy court may abstain from hearing a particular proceeding arising under title 11, or arising in, or related to a case under title 11 "in the interest of justice, or in the interest of comity with the State Courts or respect for State law."  28 U.S.C. § 1334(c)(1).  Plaintiffs also seek equitable remand of the Lawsuit back to the State Court under 28 U.S.C. 1452(b), which provides that a bankruptcy court may remand a cause of action on "any equitable ground."  28 U.S.C. § 1452(b).

The factors considered by courts in determining permissive abstention under 28 U.S.C. § 1334(c)(1) or equitable remand under 28 U.S.C. § 1452 are generally the same.

6

Appatek Indust. v. BioLab, Inc., 2010 U.S. Dist. Lex. 17154, *6-7 (M.D.N.C. 2010).

These factors include:

> (1) the court's duty to resolve matters properly before it;
> (2) the predominance of state law issues and non-debtor parties;
> (3) the economical use of judicial resources;
> (4) the effect of remand on the administration of the bankruptcy estate;
> (5) the relatedness or remoteness of the action to the bankruptcy case;
> (6) whether the case involves questions of state law better addressed by the state court;
> (7) comity considerations;
> (8) any prejudice to the involuntarily removed parties;
> (9) forum non conveniens;
> (10) the possibility of inconsistent results;
> (11) any expertise of the court where the action originated; and
> (12) the existence of a right to a jury trial.

Id.; Blanton v. IMN Financial Corp., 260 B.R. 257 (M.D.N.C. 2001). The burden of proving the grounds for permissive abstention or equitable remand of the Lawsuit rests with Plaintiffs. Appatek Indust., 2010 U.S. Dist. Lex. 17154, *7 ("Plaintiff [party seeking remand/abstention] bears burden of persuasion on the issue of equitable remand or permissive abstention.").

In considering whether equitable remand and permissive abstention are justified in relation to the Lawsuit, the Court begins with the presumption in favor of this Court exercising jurisdiction over this the Lawsuit and not abstaining in favor of the State Court. Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.), 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)("This Court begins with the understanding that a federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted."). In analyzing the above factors as to whether the Court should abstain in favor of, or remand the Lawsuit to, the State Court, the Court

7

concludes that the overwhelming majority of these factors favor a denial of the motion for permissive abstention or equitable remand.

At the hearing, the Plaintiffs specifically argued that three of these factors - the effect of remand on the administration of the bankruptcy case, the predominance of state law claims, and the right to a jury trial - strongly support remand of the Lawsuit to the State Court. The Court, however, does not believe that these three factors justify remand of the Lawsuit to the State Court.

The Court finds that the Lawsuit will have a direct effect on the administration of the Bankruptcy Case. The Lawsuit is specifically addressed in Pettus Properties' Chapter 11 Plan and Disclosure Statement, which provides that VFC's claim in the Bankruptcy Case will be reduced by any recovery from VFC in this Lawsuit. It is therefore unlikely that the confirmation of Pettus Properties' Plan can go forward without first determining the outcome of the Lawsuit.

While the Lawsuit clearly is based upon state law claims, the Court finds that the state law claims raised in the Lawsuit are not complex or unusual but are state law claims that are commonly dealt with by bankruptcy courts. *See* <u>Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)</u>, 449 B.R. 860, 880-1 (Bankr. M.D.N.C. 2011)(" It is undisputed that state law issues predominate in this action, but this only slightly favors abstention; bankruptcy courts address matters of state law regularly."); *see also* <u>Ardan Dev. Corp. v. Touhey</u>, 424 B.R. 730, 737 (Bankr. E.D.N.C. 2010)("Despite the fact that the plaintiffs' causes of action are based on state law, the matters neither present complex or unsettled issues of state law, nor are they under the purview of any particular judge previously familiar with the facts."). Additionally, VFC contends that

8

Texas law, rather than North Carolina law applies in the Lawsuit. While the Court makes no determination at this time as to which state's law applies, if Texas law is determined to apply to the claims in the Lawsuit, then this Court is as well suited to address the Texas state law claims as the State Court in North Carolina. Therefore, the fact that the Lawsuit asserts state law claims does not, in this case, justify a remand to the State Court.

Finally, the Plaintiffs contend that the matter should be remanded to the State Court because the Plaintiffs have a right to a jury trial. For purposes of the Remand Motion, the Court makes no determination as to whether or not the Plaintiffs have a right to a jury trial in the Lawsuit. However, if it is determined that the Plaintiffs are entitled to a jury trial, then such jury trial can be conducted before the United States District Court for the Western District of North Carolina.

BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, it is hereby ordered and adjudged that Plaintiffs' Remand Motion is Denied.

This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.

United States Bankruptcy Court

9